UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CYNTHIA ROBERGE,
    Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,
    Defendant.

C.A. No. 21-193-JJM-LDA

## ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Plaintiff Cynthia Roberge worked for the State of Rhode Island. During her employment and while operating her personal vehicle, she was part of a car collision with an underinsured driver. As a result of this accident, Mr. Roberge suffered significant and permanent injuries and has substantial medical bills. She has been unable to return to work.

Ms. Roberge sought underinsured motorist coverage under the State of Rhode Island's auto policy with Defendant Travelers Property Casualty Company of America. Travelers twice denied her coverage on the grounds that the policy provided uninsured/underinsured motorist ("UM/UIM") benefits to covered autos only and she was not operating a covered auto. Then Ms. Roberge filed this complaint for Breach of Contract (Count I), Declaratory Judgment that she was an insured under the policy (Count II), Declaratory Judgment that the policy offered coverage up to $1,000,000

(Count III), Declaratory Judgment that Travelers' acts were malicious entitling her to punitive damages (Count IV), and Bad Faith (Count V).

Before the Court are two motions: Travelers has filed a Motion for Summary Judgment on all Counts (ECF No. 21) and Ms. Roberge objects to Travelers' motion and has filed a Motion for Partial Summary Judgment on Counts I, II, and III (ECF No. 25).

## I. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure controls in deciding whether a party is entitled to summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* More particularly,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (citation omitted). As alluded to, there must first be no genuine issues of material fact. "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, the issue must be genuine and material. *See id.* "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . '[M]aterial' means that the fact is one that might affect the outcome of the suit under the governing law." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (internal quotation marks omitted) (citations omitted).

## II. DISCUSSION

"A determination of whether a plaintiff is covered by an insurance policy 'requires judicial construction of the policy language as a matter of law.'" *Medeiros v. Anthem Cas. Ins. Grp.*, 796 A.2d 1078, 1080 (R.I. 2002) (quoting *Mallane v. Holyoke Mut. Ins. Co.*, 658 A.2d 18, 20 (R.I. 1995)). The Court "will not depart from the literal language of the policy absent a finding that the language of the policy is ambiguous." *Medeiros*, 796 A.2d at 1080 (citing *Aetna Cas. & Sur. Co. v. Sullivan*, 633 A.2d 684, 686 (R.I. 1993)). "In order to determine whether the policy is ambiguous, we read the policy in its entirety, giving words their plain, ordinary, and usual meaning." *Mallane*, 658 A.2d at 20 (citing *Aetna Cas. & Sur. Co.*, 633 A.2d at 686).

Ms. Roberge argues that she is entitled to UM/UIM coverage because she was an insured, the vehicle she was operating was an insured vehicle, Rhode Island case law holds that the Travelers policy had to provide UM/UIM coverage to her because she was acting within the scope of her employment, and that R.I. Gen. Laws § 27-7-2.1 also requires that Travelers offer Ms. Roberge UM/UIM coverage. Travelers

argues that the policy's plain terms restrict UM/UIM coverage to the named insured, which is the State, and to vehicles the State owns. Because Ms. Roberge is a State employee, not a named insured, and she was driving a vehicle she owned, Travelers argues that she is not entitled to UM/UIM coverage.

### A.   Breach of Contract

Ms. Roberge argues that she is entitled to summary judgment because Travelers breached the insurance policy by denying her UM/UIM coverage. "It is well settled that 'the insured seeking to establish coverage bears the burden of proving a prima facie case, including but not limited to the existence and validity of a policy, the loss as within the policy coverage, and the insurer's refusal to make payments as required by the terms of the policy.'" *Ins. Co. of N. Am. v. Kayser-Roth Corp.*, 770 A.2d 403, 416-17 (R.I. 2001) (quoting *Gen. Accident Ins. Co. of Am. v. Am. Nat'l Fireproofing, Inc.*, 716 A.2d 751, 757 (R.I. 1998)). There is no dispute that there is a valid policy in this case. The issue is whether the loss Ms. Roberge suffered was within the policy coverage and therefore whether Travelers' refusal to pay Ms. Roberge violated the policy terms. The Court must look at how the policy defines who the named insured is, and which vehicles were covered to determine the parameters of coverage.

Travelers argues that Ms. Roberge is not an insured because the policy is not ambiguous in identifying the State as the Named Insured. The Court agrees; "you" referenced throughout the policy is defined as the Named Insured and the policy unambiguously identifies the "State of Rhode Island" as the Named Insured. In the

4

UM/UIM provisions, if the Named Insured is an organization, the Named Insured is anyone occupying a covered "auto."[1]

To determine whether Ms. Roberge was operating a covered "auto", the Court again turns to the policy, where covered autos are designated on the Declarations Page using symbols. ECF No. 21-3 at 8. The Travelers' Business Auto Coverage Form lists several options that the State could have selected as autos to be covered.[2] *Id.* at 12. For liability coverage, the State selected "1" which is "Any 'Auto'." *Id.* For UM/UIM, the State selected symbol "2" "Owned 'Autos' Only," which means "Only those 'autos' you [the State] own." *Id.* These provisions are not ambiguous, so the Court gives the terms their plain and ordinary meaning. The State's Travelers policy provides UM/UIM coverage for accidents in autos that the State owns. Because Ms. Roberge was driving her own car and not operating a covered "auto" as defined in the UM/UIM policy negotiated between the State and Travelers, the Court finds that she is not entitled to coverage.

Ms. Roberge argues, relying on *Martinelli v. Travelers Ins. Cos.*, 687 A.2d 443, 445–46 (R.I. 1996), that the law in Rhode Island is that she is eligible for UM/UIM

---

[1] The UM/UIM provision's definition of an "insured" also includes anyone occupying a temporary substitute for a covered "auto". The temporary substitute must be for a covered "auto" that is out of service because of its break down, repair, servicing, "loss" or destruction. In other words, a person can be an "insured" if they are driving another car because the covered "auto" is out of service. There is no dispute that that was not the case here.

[2] For example, there is another category of autos in this section; that is, "non-owned 'autos' only which are autos you don't own used in connection with your business including autos owned by your employees." ECF No. 21-3 at 12. The State did not select this option.

coverage under the Travelers policy that listed the corporation as the Named Insured even though she was not driving a covered "auto" because she was acting within the scope of her employment. The Rhode Island Supreme Court in *Martinelli* did not make that definitive ruling though; first, it observed that "the majority of jurisdictions that have addressed this issue have concluded that a corporate shareholder or an employee is not eligible for uninsured-motorist benefits under a policy in which the corporation is the named insured, in the event that his or her injuries were sustained outside an insured vehicle." *Id.* at 446 (citing cases). Ms. Roberge seizes on the fact that the court mulled over a possible coverage scenario where "in different circumstances this Court could conclude that an individual shareholder or employer might be eligible for uninsured-motorist coverage under a policy that listed the corporation as the named insured[]" and find it "conceivable that a shareholder or an employee who is injured while acting within the scope of his or her employment might be considered the named insured for purposes of uninsured-motorist coverage." *Id.* The court did not articulate what those "different circumstances" could be or what policy terms would exist where a shareholder or employee acting within the scope of employment could come under the definition of a "Named Insured."

The applicability of *Martinelli's* hypothetical exception entirely relies on the policy language. That said, the scenario here does not incorporate the circumstances that the court contemplated in this theoretical "scope of employment" exception. In *Martinelli*, the Court envisioned UM/UIM coverage for an injured party who was a

6

shareholder or employer – a person who is aligned with the corporation that was the named insured. *Id.*; *see also Medeiros v. Aetna Cas. & Sur. Co. of Am.*, No. C.A. 01-4842, 2003 WL 23195558, at *6 (R.I. Super. Dec. 8, 2003) ("Shareholders acting within the scope of their business on behalf of their corporation may be eligible for uninsured-motorist coverage when the policy lists the corporation as the insured."). As the Rhode Island Supreme Court speculated, if the policy defines a named insured to include shareholders or employers or defines a covered auto to include a car used in the context of employment then the injured driver could be covered under the UM/UIM umbrella.

None of those circumstances are present here. Ms. Roberge was an employee with no corporate affiliation. The State's UM/UIM coverage in the policy defined covered "auto" as only autos the State owns. There is no dispute that she was driving her own car and there is no evidence that she did so because all other State vehicles were broken down or out of service. *Martinelli's* hypothetical scenario does not advance Ms. Roberge's cause for coverage. And as a federal court sitting in diversity jurisdiction, the Court will not speculate whether the *Martinelli* court would have interpreted the Travelers policy to cover Ms. Roberge. According to the Travelers policy's plain language, she is not a "Named Insured" under the UM/UIM provisions in the State's policy and so was not entitled to coverage under same.

### B. Statute

While the Court's interpretation of the policy language given its plain meaning is complete and works to defeat her claims, Ms. Roberge takes a final tack to gain

7

coverage. She argues that Rhode Island's uninsured-motorist statute requires the State to provide her with UM/UIM coverage. *See* R.I. Gen. Laws § 27–7–2.1.[3] "This statute was premised on the concept that responsible motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor." *Amica Mut. Ins. Co. v. Streicker*, 583 A.2d 550, 553 (R.I. 1990). The scope of the statute was later expanded to include underinsured motorists. *Id.* (citing R.I. Gen. Laws § 27–7–2.1(g)). By enacting this statute, the legislature intended "that as a matter of public policy, protection should be given to the named insured against economic loss resulting from injuries sustained by reason of the negligent operation of an uninsured vehicle." *Rueschemeyer v. Liberty Mut. Ins. Co.*, 673 A.2d 448, 450 (R.I. 1996).

According to the statute, a "policy insuring against loss" must provide coverage "for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." R.I. Gen.

---

[3] The uninsured-motorist statute, R.I. Gen. Laws § 27–7–2.1, reads as follows, in relevant part:

> No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage, bodily injury, sickness or disease, including death, resulting therefrom....

Laws § 27-7-2.1 (c)(1). The statute defines "policy insuring against loss" as "a policy that provides primary coverage for the insured motor vehicle." *Id.* Travelers argues that it was not required to extend Ms. Roberge UM/UIM coverage under this statute because she was not an "insured under the policy" and was not operating an "insured motor vehicle" primarily covered by the policy. Travelers' interpretation of the statute follows the caselaw. "The Rhode Island courts have consistently interpreted § 27–7–2.1 to provide *policyholders* with optimum coverage. At the same time, however, the state supreme court has been chary of extending coverage to other persons in the face of clear and explicit contract provisions to the contrary." *Gleason v. Merchants Mut. Ins. Co.*, 589 F. Supp. 1474, 1483 (D.R.I. 1984).

The Travelers' policy is a contract between Travelers and the State as policyholder. Those two parties negotiated a limit on UM/UIM coverage to primary coverage for motor vehicles that the State owns. This complies with the Rhode Island statute, which by its plain terms, applies only to a "policy insuring against loss" defined as one providing "primary coverage for the insured motor vehicle." R.I. Gen. Laws § 27–7–2.1(a), (c)(1). Ms. Roberge's personal vehicle had primary coverage under her personal insurance policy so had the statutorily required UM/UIM coverage under that policy. Nothing in the statute requires the policy to extend coverage to other persons. *See Gleason*, 589 F. Supp. at 1483 ("While the blanket protection of the uninsured-motorist clause is tucked snugly about the purchaser of a policy of motor vehicle insurance issued in Rhode Island, the insurer retains considerable say in determining which other persons can slip beneath the coverlet.");

9

*Malo v. Aetna Cas. & Sur. Co.*, 459 A.2d 954, 956–57 (R.I. 1983). ("Neither the terms of the statute nor the public policy expressed therein mandates what class of persons must be extended coverage, nor do they disallow any restriction on that class. Rather, the designation of what persons are insured for purposes of this statute is left to the terms of the particular insurance policy."). Because the Travelers' policy is not Ms. Roberge's primary policy, it is not a "policy insuring against loss" within the meaning of, and subject to the requirements of, R.I. Gen. Laws § 27–7–2.1. Thus, Ms. Roberge has shown no basis that the Travelers' policy violated R.I. Gen. Laws § 27–7–2.1 by not providing her with UM/UIM coverage.

Finally, Ms. Roberge argues that the interpretation for which Travelers advocates violates public policy. Public policy is offended where the policy limits coverage to those who are insured not where it limits the category of individuals who are insured. While the Court agrees that the outcome restricting Ms. Roberge's ability to access additional insurance is unfortunate, the law firmly states that there is "a fundamental distinction between insurance policy exclusions that restrict the class of insureds covered by the policy [such as the one here], and exclusions that narrow the coverage afforded to the named insured under the policy. The former has been allowed, while the latter have generally been found to violate the public policy expressed in the uninsured motorist statute." *Casco Indem. Co. v. R.I. Interlocal Risk Mgmt. Tr.*, 929 F. Supp. 65, 71 (D.R.I. 1996); *Glaude by Stephenson v. Royal Indem. Co.*, 949 F. Supp. 72, 77 (D.R.I. 1996) (where "the provision only defines the class of insureds, without in any way limiting the coverage afforded to those who are insured,

public policy is not offended."). The Travelers' policy limitation restricts the class of people who are insured and does not narrow the coverage afforded to the State as the "Named Insured" thus it does not violate public policy.

### III. CONCLUSION

Ms. Roberge has not shown that either the terms of the Travelers policy or the operation of R.I. Gen. Laws § 27–7–2.1 make Travelers legally responsible for any uncompensated damages Ms. Roberge incurred because of the car collision with the underinsured motorist and so Travelers did not breach the contract when it denied her coverage. Thus, the Court GRANTS Travelers' Motion for Summary Judgment as to all Counts (ECF No. 21) and DENIES Ms. Roberge's Motion for Partial Summary Judgment. ECF No. 25.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

December 15, 2023